**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| TAYMURAZ ABDULAEV, | ) | NO. CV 26-4767-AS |
| Petitioner, | ) | |
| v. | ) | **MEMORANDUM DECISION AND ORDER** |
| ERNESTO SANTACRUZ, JR., et al., | ) | |
| Respondents. | ) | |

**I.**

**INTRODUCTION**

On May 2, 2026, Taymuraz Abdulaev ("Petitioner"), an immigration detainee proceeding through counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition") against: Ernesto Santacruz, Jr., Acting Director of the Los Angeles Field Office for United States Immigration and Customs Enforcement ("ICE"); the United States Department of Homeland Security ("DHS"); DHS Secretary Markwayne Mullin; Acting United States Attorney General Todd Blanche; the Executive Office for Immigration Review; and James Janecka, Warden of the Adelanto ICE Processing Center (collectively "Respondents").

(Docket ("Dkt.") No. 1).  The Petition raises three grounds for habeas relief: (1-2) Petitioner has a protected liberty interest in remaining out of custody and his detention violates the Due Process Clause;[1] and (3) Respondents' continued detention of Petitioner is arbitrary and capricious under the Administrative Procedures Act.  (Petition, ¶¶ 45-70).  Petitioner seeks, among other relief, an order requiring his immediate release from custody.  (Petition at 21).

On May 4, 2026, the Court issued a Notice of General Order 26-05 and Briefing Schedule ("Notice") that required Respondents to file an Answer to the Petition by no later than seven days from the date of the Notice, and allowed Petitioner to file a Reply by no later than three days after service of Respondents' Answer.  (Dkt. No. 5).

On May 11, 2026, Respondents filed an Answer to the Petition stating "Respondents are not presenting an opposition argument at this time.  Should the Court enter relief, judgment may be entered, and consistent with the 'expeditious resolution' of § 2241 Immigration Petitions required by the General Order, no more filings or proceedings will be necessary in this matter."  (Dkt. No. 7).  Petitioner did not file a Reply.

The parties have consented to proceed before the undersigned Magistrate Judge in this matter.  (Dkt. Nos. 3, 8).

---

[1]   Both Grounds One and Two address the alleged deprivation of Petitioner's liberty interest in remaining out of custody.  (See Petition, ¶¶ 45-65).   Ground Two also cites certain immigration statutes.  (Petition, ¶¶ 63-64).

2

**II.**

**BACKGROUND**

Petitioner is a Russian citizen who entered the United States on or around February 3, 2023.  (Petition, ¶¶ 1, 12, 31, 54, 67 & Exh. A).  On February 4, 2023, DHS served Petitioner with a Notice to Appear, charging him with removability under Immigration and Naturalization Act § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen present in the United States without being admitted or paroled, and placed Petitioner in removal proceedings.  (Petition, Exh. A).  Petitioner was released into the United States, where he resided for over three years.[2]  (Petition, ¶¶ 1, 3-4, 54, 67).

On September 20, 2023, Petitioner filed an application for asylum and withholding of removal.  (Petition, ¶ 2).

On April 19, 2026, ICE arrested Petitioner.  (Petition, ¶¶ 6, 31).  Petitioner is currently detained at the Adelanto ICE Processing Center.  (Petition, ¶¶ 7, 12).  Petitioner asserts that he was employed as a food delivery driver prior to his detention, he has no criminal history, and he has appeared for all scheduled hearings and biometric appointments and demonstrated his intention to comply with all court orders and conditions of release.  (Petition, ¶¶ 5, 8-9).

---

[2]  Although Petitioner states that DHS released him into the United States, Petitioner does not further elaborate on the circumstances surrounding this release, such as whether Petitioner was released on his own recognizance.

## III.

## DISCUSSION

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." Hernandez v. Sessions, 872 F.3d 976, 990 (9th Cir. 2017); Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693; Hernandez, 872 F.3d at 990; see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting Reno v. Flores, 507 U.S. 292, 306 (1993))). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690; Hernandez, 872 F.3d at 990. "'Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.'" Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1162 (C.D. Cal. 2025) (quoting Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)); see also Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("[T]he fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."), appeal dismissed by, 2021 WL 1590193 (9th Cir. 2021).

Petitioner contends he was denied due process of law when he was "unlawfully detained[] without first being provided a constitutionally adequate hearing to determine whether his incarceration is justified." (Petition, ¶¶ 17-18, 56-65).  Respondents, as noted, have not opposed the Petition.  (Dkt. No. 7).  "Respondents' non-opposition itself is a basis to grant the Petition." Guadran v. Mullin, 2026 WL 1182198, *1 (C.D. Cal. 2026); S.A. v. Mullin, 2026 WL 1242905, *1 (C.D. Cal. 2026); see also Soleimani v. Larose, 2025 WL 3268412, *3 (S.D. Cal. 2025) ("By failing to respond to the claims . . . asserted, Respondents have conceded the claims.").  And even if that was not the case, Petitioner is entitled to release from custody because his detention without a hearing violated due process.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). Courts examine procedural due process claims in "two steps." Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989); Vasquez v. Rackauckas, 734 F.3d 1025, 1042 (9th Cir. 2013).  First, courts consider whether the petitioner was deprived of a constitutionally protected liberty interest, and second "whether that deprivation was accompanied by sufficient procedural protections." Johnson v. Ryan, 55 F.4th 1167, 1179 (9th Cir. 2022); Thompson, 490 U.S. at 460.

"Petitioner has a substantial private interest in remaining out of immigration custody.  As a noncitizen residing within the United States, Petitioner is entitled to constitutional due process."

Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 878 (C.D. Cal. 2026); Martinez v. Noem, 821 F. Supp. 3d 1183, 1190 (C.D. Cal. 2026). Moreover, it is undisputed that Petitioner was released into the United States in February 2023, and he remained free for over three years before ICE arrested him. (Petition, ¶¶ 1, 3-4, 54, 67). "Petitioner's release . . . gave rise to 'the most elemental of liberty interests – the interest in being free from physical detention by one's own government.'" Martinez, 821 F. Supp. 3d at 1190 (quoting Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004)); Medrano-Rocha, 817 F. Supp. 3d at 878; see also Foucha v. Louisiana, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."); M.R. v. Chestnut, __ F. Supp. 3d __, 2026 WL 218808, *4 (E.D. Cal. 2026) ("Petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest."); Rojas v. Albarran, __ F. Supp. 3d __, 2025 WL 4693108, *4 (N.D. Cal. 2025) ("Courts in this district consistently hold that when a noncitizen is released pending civil removal proceedings, the noncitizen has a protected liberty interest in remaining out of immigration custody."); Pinchi, 792 F. Supp. 3d at 1032 ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody.").

Additionally, Petitioner's release into the United States created "an implicit promise" that liberty will be revoked only for failing to comply with the conditions of release. Morrissey v. Brewer, 408 U.S.

471, 482 (1972); Martinez, 821 F. Supp. 3d at 1191; Medrano-Rocha, 817 F. Supp. 3d at 878; Rojas, __ F. Supp. 3d at __, 2025 WL 4693108 at *4. Accordingly, "Petitioner establishes a significant liberty interest in remaining out of immigration custody." Martinez, 821 F. Supp. 3d at 1191; Medrano-Rocha, 817 F. Supp. 3d at 878; Pinchi, 792 F. Supp. 3d at 1032-33.

Having determined that Petitioner has a protected liberty interest in remaining out of custody, the Court applies the three-part test established in Mathews to determine whether the government's procedures were constitutionally sufficient. Under Mathews, courts consider:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335; Rodriguez Diaz v. Garland, 53 F.4th 1189, 1207 (9th Cir. 2022); Hernandez, 872 F.3d at 993.

As to the first factor, as explained, Petitioner has a significant interest in remaining out of custody given his release and the extensive time he has spent out of custody. Morrissey, 408 U.S. at 482; Martinez, 821 F. Supp. 3d at 1190-91; Medrano-Rocha, 817 F. Supp.

3d at 878; Pinchi, 792 F. Supp. 3d at 1032-35; see also Hernandez, 872 F.3d at 993 ("As to the first [Mathews] factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'  That is beyond dispute." (citation omitted)); Meneses, 811 F. Supp. 3d at 1163 ("Petitioner has a substantial private interest in remaining in his home, providing for his family, and participating in the community, all out of custody."); Doe v. Becerra, 787 F. Supp. 3d 1083, 1093-94 (E.D. Cal. 2025) ("It cannot be gainsaid that Petitioner has a substantial private interest in maintaining his out-of-custody status. . . .  The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Accordingly, the first Mathews factor favors Petitioner.

As to the second factor, it is undisputed that, despite his protected liberty interest, Petitioner was detained without a pre-detention hearing. (Petition, ¶ 17). Under these circumstances, there is a high risk of erroneous deprivation of liberty. See Martinez, 821 F. Supp. 3d at 1191 ("[T]he risk of erroneous deprivation is significant without a pre-detention hearing."); Meneses, 811 F. Supp. 3d at 1164 ("There is an unacceptably high risk that the government would erroneously deprive Petitioner of his liberty interest absent a pre-detention hearing."); Duong v. Kaiser, 800 F. Supp. 3d 1030, 1040 (N.D. Cal. 2025) ("The government's unilateral determination that re-detention is warranted is far less likely to be correct than the decision reached by a neutral adjudicator in a bond hearing."); Pinchi, 792 F. Supp. 3d at 1035 ("[I]t is clear that there is a significant

risk that the government will erroneously deprive Ms. Garro of that liberty interest if it does not provide her with a pre-detention hearing. Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor Ms. Garro Pinchi has had an opportunity to determine whether there is any valid basis for her detention."); Torres Ferrera v. Scott, 2026 WL 776145, *5 (W.D. Wash. 2026) ("Where a person with a protected liberty interest is provided no process at all to contest its deprivation, due process cannot be satisfied. Put differently, no process can never equal due process. The risk of erroneous deprivation will always be unacceptably high where no process is provided. . . ."); G.S. v. Hermosillo, 2026 WL 179962, *3 (W.D. Wash. 2026) ("the absence of pre-deprivation procedures created an unacceptably high risk of erroneous deprivation"). Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690; Martinez, 821 F. Supp. 3d at 1191. Yet, Petitioner's initial release from ICE custody "reflected a determination by the government that [he] was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless [he] no longer meets those criteria." Pinchi, 792 F. Supp. 3d at 1034; see also Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("The federal government sometimes releases noncitizens on bond or parole while their removal proceedings are pending. Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."), affirmed by, 905 F.3d 1137 (9th Cir. 2018); Venega-Maltez v. Semaia, 2026 WL 846035, *7 (C.D. Cal. 2026) ("Petitioner was

released upon his entry into the United States, which reflected a finding that he was not a flight risk or danger to the community."). Accordingly, the second Mathews factor favors Petitioner.

Regarding the third factor, "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore v. Kim, 538 U.S. 510, 518 (2003)). "However, it is important to stress that the 'government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him without [a pre-detention] hearing[,]'"[3] Mendoza v. Noem, 2026 WL 683180, *7 (E.D. Cal.) (quoting Zagal-Alcaraz v. ICE Field Office, 2020 WL 1862254, *7 (D. Or.), report and recommendation adopted by, 2020 WL 1855189 (D. Or. 2020)), report and recommendation adopted by, 2026 WL 927654 (2026); see also Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019) ("[T]he Court notes that the governmental issue at stake in this motion is the ability to detain Petitioner without providing him with another bond hearing, not whether the government may continue to detain him." (italics omitted)), appeal dismissed by, 2019 WL 4855033 (9th Cir. 2019), and as many courts have recognized, "there is no meaningful countervailing government interest that supports detaining previously [released] noncitizens like [P]etitioner without a pre-detention hearing." Meneses, 811 F. Supp. 3d at 1164; Martinez,

_____

[3] "[D]etention for its own sake is not a legitimate governmental interest." Claros v. Albarran, 811 F. Supp. 3d 1062, 1070 (N.D. Cal. 2025); see also Pinchi, 792 F. Supp. 3d at 1036 ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest.").

821 F. Supp. 3d at 1192; see also Pinchi, 792 F. Supp. 3d at 1036 ("[T]here is no countervailing government interest — the third and final *Mathews* factor — that supports conducting a bond hearing only after Ms. Garro Pinchi has been detained, rather than in advance thereof."); Doe, 787 F. Supp. 3d at 1094 ("The final *Mathews* factor is simple as the Government's interest in placing Petitioner in detention without a hearing is low."); Ortega, 415 F. Supp. 3d at 970 ("[T]he government's interest in re-arresting Ortega without a hearing before an IJ is low."); Van Nguyen v. Bondi, 818 F. Supp. 3d 1235, 1242 (W.D. Wash. 2026) ("[T]he government's interest in arresting and detaining a noncitizen without a hearing is low where the noncitizen was already released because the government had been persuaded he would not pose a flight risk or a danger to the community."). Indeed, "[t]he efficiency burden entailed by a bond hearing would be minimal. As other courts have observed, bond hearings require little expenditure of resources." Duong, 800 F. Supp. 3d at 1040; see also Martinez, 821 F. Supp. 3d at 1192 ("[C]ustody hearings in immigration court are 'routine' and impose only a 'minimal' cost." (citations omitted)).

Therefore, applying the Mathews factors, Petitioner was denied due process of law when he was detained without a pre-detention hearing. See Zinermon v. Burch, 494 U.S. 113, 127 (1990) (Applying Mathews, "the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property."); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' We have described 'the root

requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant [liberty or] property interest.'" (citations and italics omitted)); Torres Ferrera, 2026 WL 776145 at *5 ("Because Petitioner had no opportunity to respond to the reasons for her detention, her re-detention violated her due process rights under the Fifth Amendment to the United States Constitution.  Therefore, the Court finds that Petitioner is in custody in violation of the Constitution of the United States."). And "[b]ecause Petitioner's deprivation of liberty without due process has been unlawful from its inception, [his] immediate release is required."[4]  Torres Ferrera, 2026 WL 776145 at *6; see also Movsesyan v. Bondi, 2026 WL 712824, *2-5 (C.D. Cal. 2026) (ordering "Petitioner's immediate release, and prevent[ing] Respondents from re-detaining Petitioner without notice and an opportunity to be heard" when Petitioner had "shown that his re-detention without any notice or an opportunity to be heard violates procedural due process"); Ovikian v. Noem, 2026 WL 391431, *4 (C.D. Cal. 2026) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. . . .  The only appropriate remedy is to release Petitioner and enjoin his re-detention, unless and until he is provided due process measures with respect to the revocation of his [Order of Supervision]."); Juan v. Noem, 2026 WL 607714, *3 (W.D. Wash. 2026) ("The appropriate remedy for the violation of Petitioner's constitutional rights is release.").

---

[4]  Having so concluded, the Court need not address the other claims Petitioner raises.

**IV.**

**ORDER**

Accordingly, it is hereby ORDERED that the Petition (Dkt. No. 1) is **GRANTED.** Respondents shall immediately release Petitioner (A246615620) from immigration custody subject to the conditions of Petitioner's most recent order of supervision, if any, and without the imposition of any new or further restraints, such as reporting requirements, GPS, or electronic monitoring. Respondents are also enjoined from re-detaining Petitioner absent strict compliance with the requirements of due process and all applicable statutes and regulations.

Additionally, the Court ORDERS that Respondents shall file a declaration by no later than 5:00 p.m. on June 8, 2026, confirming Petitioner has been released from custody. IT IS SO ORDERED.

DATED: June 4, 2026

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

13